UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


CHARLES EDWARD DAY,

                    Petitioner,

-vs-                                                    Case No.  8:04-cv-643-T-24MAP

JAMES V. CROSBY, JR.,

                    Respondent.
_____/

## ORDER

This cause is before the Court on Petitioner Charles Edward Day (Day's) 28 U.S.C. § 2254 petition for writ of habeas corps. Day challenges his conviction and sentence entered by the Circuit Court for the Sixth Judicial Circuit, Pasco County, Florida.

PROCEDURAL HISTORY

On October 6, 1997,  Day was charged by Information with one count of aggravated battery, a second degree felony. The Information alleged that on August 20, 1997, Day knowingly and intentionally caused bodily harm to Frank Sardo by stabbing him with a knife. The case was set for a bench trial before the Honorable Stanley R. Mills, Circuit Judge. Day was represented by Manuel E. Penton, Esq.  Prior to the trial, on February 22, 1999, the state trial court held a hearing on Penton's motion for continuance. During the hearing, Penton informed the state trial court that he was attempting to contact a potential defense witness, Jerry Cornwell.  (Exhibit 19,  R 127-129)

Penton alleged that Cornwell[1] saw the incident and was critical to the defense. However, Penton admitted that he did not have an initial statement from Cornwell and, therefore, was not sure whether Cornwell's testimony was really critical to the defense. Penton relayed to the state trial court  that, when Penton asked Cornwell if he would testify at Day's trial,  Cornwell stated he would not honor a Florida subpoena due to the hardship his absence would have on his employment. (Exhibit 19, R. 128).

However, according to Penton, Cornwell assured Penton he would be available if Cornwell had additional time to comply with Penton's request to appear at the trial as a witness.  At the conclusion of the February 22, 1999,  hearing, the state trial court granted defense counsel's motion for continuance.

On April 14, 1999, the day of the bench trial, Day agreed to the waiver of jury trial, and signed a written waiver to that effect.  (V1,  R 41; V2,  R 77)[2]. The judge found Day guilty as charged. (V3,  R 209). On May 21, 1999, the court sentenced Day to thirty years imprisonment as a violent career criminal. (V3, R 263).

On direct appeal, assistant public defender Howardene Garrett was appointed to represent Day.  She filed an Anders[3] brief stating that she could find "no meritorious argument to support the contention that the state trial court committed significant reversible

---

[1] The court reporter at the hearing for continuance (Exhibit 19) spelled the witness' name "Cronwell," but the spelling in all other parts of the record is "Cornwell."

[2] Respondent filed the record on appeal as Exhibit 20.  Citations to the record will be designated by the volume number, the letter "R" and the page number.

[3] Anders v. California, 386 U.S. 738 (1967).

error in this case." (Exhibit 10). Ms. Garrett directed the state district court of appeal's attention to two possible issues for review: (1) Was there sufficient evidence to support a judgment of guilt for aggravated battery as charged? (2) Did the trial court err in sentencing Day as a violent career criminal?  Day elected not to file a supplemental pro se brief.  (See Exhibit 11). The State filed an answer brief. (Exhibit  12). On May 31, 2000, in Case No. 2D99-2169, the state district court of appeal per curiam affirmed Day's conviction and sentence. Day v. State, 764 So. 2d 588 (Fla. 2d DCA 2000) [Table].

On April 12, 2001, Day filed a Rule 3.850 motion for post-conviction relief,  (Exhibit 4), raising six grounds for relief: five allegations of ineffective assistance of trial counsel and a sixth allegation asserting that the cumulative effect of trial counsel's acts and omissions deprived Day of a fair trial. On December 27, 2001, the state trial court summarily denied all claims but one, and directed the State to respond to the remaining claim: that counsel failed to investigate, interview, depose, consult, and/or call Jerry Cornwell as a witness. (Exhibit 5) As to the claims summarily denied, the state trial court's order reads:

> Defendant's first ground is that counsel was ineffective for failing to move to dismiss the information. In order to establish an ineffective assistance of  counsel claim, Defendant must show both that counsel's performance was   deficient and that  the deficience prejudiced the Defendant. See Strickland v. Washington, 466 U.S. 668 (1984). Specific acts or omissions must be alleged to demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. If the claim fails to satisfy either the performance of the prejudice component, the court need not consider the other. See Johnson v. State, 593 So. 2d 206 (Fla. 1992).
>
> Defendant claims the information  was defective because the officer who signed the probable cause affidavit was not a witness to the offense and did not submit a sworn affidavit from the victim or other witness in order establish probable cause. Defendant is apparently referring to the arrest

report, as there is no probable cause affidavit in the court record. There is no requirement that sworn affidavits be attached to the arrest report. Nor is there a requirement that sworn affidavits be attached to the information. The information contains the required sworn oath of the Assistant State Attorney certifying that he received testimony under oath from the material witness or witnesses for the offense. *See Fla.R.Crim.P. 2.140(g)*. Therefore, Defendant has failed to establish that counsel's performance was deficient, as counsel had no basis to object to the information.

Defendant's second ground is that counsel was ineffective for pressuring Defendant to waive a jury trial. Defendant alleges that counsel stated that that it would be impossible to obtain a fair trial by jury because of pre-trial publicity, and that he would not be able to get a change of venue. Defendant alleges that he would not have waived his right to a jury trial if he had known that he could get a change of venue if a fair and impartial jury could not be selected.

In order to obtain a change of venue because of pretrial publicity, it must be established that the inhabitants of the community could not possibly put aside any knowledge, prejudice, bias, or preconceived opinions and try the case solely on the evidence presented in the courtroom. *See Rolling v. State*, 695 So. 2d 278 (Fla. 1997). However, simply having prior knowledge of the case will not disqualify a juror. The court must evaluate the extent and nature of the publicity, and the difficulty encountered in actually selecting a jury. *See id.* at 285. To evaluate the difficulty encountered in selecting a jury, the court would attempt to empanel a jury. Other than stating that he was featured on television in a program called "The Convicted Felon Next Door," Defendant has not established that the publicity in this case was such that an impartial jury could not have been empaneled, thereby defeating the motion.

Counsel's decisions regarding trial strategy will not be disturbed on a motion for post conviction relief. *See Buford v. State*, 492 So. 2d 355 (Fla. 1986). Generally it is not appropriate to make a determination that counsel's actions were a matter of trial strategy without an evidentiary hearing. See *Colling v. State*, 671 So. 2d 827 (Fla. 2d DCA 1996). However, in this case it is clear from Defendant's statements in his motion that counsel's decision or recommendation to waive a jury trial was a strategic decision made after considering the options. Defendant acknowledges that counsel presented him with his reasoned recommendation, and that Defendant agreed to waive jury trial on the basis of counsel's advice. See Motion for Post-Conviction Relief, pp. 5, 5A. Defendant's dissatisfaction with the outcome does not negate his agreement to the waiver. Therefore, the claim is denied.

-4-

Defendant's third ground is that counsel was ineffective for failing to object and move for mistrial multiple times when Defendant was deprived of the appearance of a fair and impartial judge and fact finder and a fair trial. Defendant's first example occurred at the close of the State's case after counsel moved for a judgment of acquittal. The Court stated that the victim's cut [injury] was not made by somebody's fist, denied the motion, then stated that "we'll proceed on further to see if there are any alternative explanations for how this happened." Defendant alleges that these comments amounted to a determination by the Court of Defendant's guilt prior to hearing Defendant's testimony, and impermissibly shifted the burden of proof to the Defendant in violation of his right to the presumption of innocence.

In considering a motion for judgment of acquittal, the court must consider the evidence in the light most favorable to the prosecution. *See Beasley v. State*, 774 So. 2d 649 (Fla. 2000) Where there is room for a difference of opinion between reasonable persons as to the proof of facts or as to the inference that might be drawn from the facts, the motion should be denied and the case submitted to the jury. *See id.* Although there was no jury in this case, the principle remains the same if the court is the trier of fact. The Court stated that it "[couldn't] imagine that this is inconsistent with the State's theory," and properly denied the motion.

The Court's statement that it would "proceed on further to see if there are any alternative explanations" for how the injury occurred was simply an acknowledgment that the State had presented a prima facie case and that, therefore, the trial would continue and the Defendant now had his opportunity to present his evidence. It did not amount to either a determination of Defendant's guilt or an improper shifting of the burden to Defendant. This portion of Defendant's claim is denied. Defendant has failed to establish that counsel had valid grounds to object and, therefore, that counsel's performance was deficient.

Defendant also alleges that counsel failed to object seven times during Defendant's renewed motion for judgment of acquittal when the Court stated that it "had to have an explanation" for how the victim got cut. Defendant claims this comment is also an improper shifting of the burden of proof to the Defendant. The burden is on the State to prove its case beyond a reasonable doubt. Once it has done so, it is not an improper shifting of the burden to require Defendant to offer proof to overcome the State's evidence. This portion of Defendant's claim is also denied for failure to establish that counsel had valid grounds to object, and, therefore, that counsel's performance was deficient.

Defendant also claims that counsel was ineffective for failing to object during closing argument when the Court interrupted counsel's argument to state that counsel was arguing facts not in evidence.  Defendant alleges that the prosecution had not objected and, therefore, the Court was improperly assisting the prosecution by its action. The record shows that counsel argued that the description of the knife had been entered into evidence, and the information counsel was attempting to introduce regarding the size and shape of the alleged weapon was ultimately allowed to be presented. See Trial Transcript, pp. 127-125.  Therefore, the claim is refuted by the record and is denied.

Defendant's fourth ground for relief is that counsel was ineffective for failing to investigate, interview, depose, consult, and/or call several crucial witnesses.  First, Defendant claims that a co-worker, Jerry Cornwell, was available and willing to testify that he was a witness to the incident and that Defendant did not have a weapon.  Although another witness called by the State testified that he did not see Defendant with a weapon and the Court acknowledged the inconsistencies in the accounts of the eyewitnesses, it cannot be established that the failure to call additional eyewitnesses would not have had an effect on the outcome of the trial. Therefore, this portion of Defendant's claim cannot be conclusively refuted by the record, and the State will be required to respond on this issue.

Defendant also claims that counsel failed to investigate and call an expert witness to testify to the type of cut suffered by the victim to create a reasonable doubt that it was caused by a knife. Defendant claims "there is a reasonable probability that [counsel] would have found an expert to testify that it was physically impossible for the victim's and state's doctor's testimony to have been true and/or correct." Defendant does not elaborate on why he alleges that is was physically impossible for the victim's and doctor's testimony to be correct. Moreover, he does not specify what portion of their testimony he is challenging.

Assuming Defendant is challenging the testimony as to the type of wound, it is undisputed that the victim's injury was the result of a cut, rather than blunt trauma. See Trial Transcript, pp. 67, 79, 82, 118-119, 726-127, 136.  Pictures of the cut were admitted into evidence. See Trial Transcript, pp. 28-29, The deputy sheriff who investigated  the complaint testified that "[i]t was a clean cut. And it appeared to me that a knife or sharp object would have penetrated the skin." See Trial Transcript p. 67. The doctor who treated and stitched the victim testified that "[i]t was a clean cut. The edges were very clean, precise. It was a linear cut. It was not irregular at all."  See Trial

Transcript, p. 79. Defense counsel conceded that '"[i]t clearly is a straight cut," and "... there' s no question there's a cut. It's clear as a bell there's a cut." See Trial Transcript, pp. 126-127.  The Court noted that "[i]t's clearly a straight cut," and "I would think any of us could look at it and tell that it was a cut." See Trial Transcript, pp. 118, 126. Based on the overwhelming, uncontroverted evidence that the victim's wound was the result of a cut, counsel's failure to call an expert to testify that the victim's wound was not a cut, or was not made by a knife, cannot be considered deficient performance. Therefore, this portion of Defendant's ground four is denied.

Defendant also claims that counsel was ineffective for failing to call a number of other witnesses who could testify to statements made by the victim to the effect that he was out to get Defendant, or was going to get Defendant any way he could. Defendant states that counsel told him the testimony would be hearsay, but fails to state an exception that would permit the testimony to be admitted at trial.  As Defendant has failed to establish that the witnesses would have been able to testify, Defendant has failed to establish that counsel was ineffective for failing to call them.

Defendant alleges that another witness would testify that the victim told him that Doug Walker, the contractor both Defendant and the victim worked for, cut him after the incident between Defendant and the victim was completed. Again, Defendant fails to establish a hearsay exception that would allow this testimony to be admitted. Moreover, the uncontroverted evidence is that the victim sustained a cut at the time of the incident. See Trial Transcript, pp. 48, 102-103. Defendant testified, as he acknowledges in his motion, that the victim "pulled the cut apart" with his fingers  to show to Defendant while still at the scene of the incident.  See Deposition of Heinz Douglas Walker, pp. 13, 20. Accordingly, Defendant's ground four is denied.

In ground five, Defendant claims counsel was ineffective for failing to introduce key evidence to prove Defendant's innocence. First Defendant claims that counsel failed to introduce the drywall knife, or [sic] for failing to elicit a description of the knife. Defendant again refers to the Court's informing counsel during his attempt to utilize a description of the drywall knife during closing argument to show that the knife would not have caused the victim's wound. As previously stated, counsel ultimately was allowed to present both the description of the knife and the argument that it could not have caused the victim's wound. Therefore, this portion of Defendant's claim is without merit and is refuted by the record.

Defendant also claims that counsel failed to introduce evidence that the victim had filed a lawsuit against Defendant. However, Defendant refutes his own claim by stating that the Court overruled the State's objection to

cross examination of the victim regarding his civil suit against Defendant, and that counsel impeached State's witness James Kyker with his inconsistent deposition testimony regarding whether the victim told Kyker that he would give him half of the money from the suit if Kyker testified for him. See Motion for Post-Conviction Relief, p. 6g; Trial Transcript, pp. 32-33, 60-63. Therefore, this claim is without merit and is refuted by both Defendant and the record.

Defendant's sixth and final claim is that the cumulative effect of all acts and omissions outlined in grounds one through five deprived Defendant of a fair trial, effective assistance of counsel, and due process.  As each of Defendant's claims was considered individually, they will not be reconsidered here.  Because Defendant has failed to establish in the majority of his claims that counsel was ineffective, the combination of those claims cannot establish that counsel was ineffective.

(Order Denying Motion or Post Conviction Relief in Part and Directing the State to Respond in Part, pp. 1-8).

The State filed a response conceding Day was entitled to a hearing on the claim regarding Jerry Cornwell. (Exhibit 13). An evidentiary hearing was held on November 6, 2002, before the Honorable W. Lowell Bray, Jr. (Exhibit 6). The state trial court appointed assistant public defender Dean R. Livermore to represent Day in the post-conviction proceeding.

The  testimony of Day and trial counsel Mr. Penton was presented at the hearing. On January 8, 2003, the state trial court entered a final order denying the motion for post-conviction relief. (Exhibit 7). The order sets out the following findings of fact and conclusions of law:

Defendant claims in his fourth ground for relief that counsel was ineffective for failing to investigate, interview, depose, consult, and/or call several crucial witnesses.  This claim was denied as to all witnesses other than Jerry Cornwell, a co-worker of Defendant's. Defendant alleged that Cornwell was available and willing to testify that he was a witness to the

-8-

incident and that Defendant did not have a weapon. Defendant testified at the hearing that he provided counsel with Cornwell's name at their first meeting, but that counsel did not immediately follow up by contacting Cornwell. Defendant further testified that he believed that Cornwell would be present for trial and that when he was not, he asked counsel to request a continuance, but that counsel told him he could not do so as the judge had already given them continuances and would not do so again.

Manuel Penton, Defendant's trial counsel, testified that, although he did not recall exactly when Defendant provided him with Cornwell's name, he believed it was just prior to the scheduled trial date. Counsel testified that when he contacted Cornwell by phone at his home in Illinois after numerous unsuccessful attempts, Cornwell agreed to come and testify for Defendant. At that time counsel requested a continuance to pursue the matter further. At the hearing on Defendant's motion for continuance, counsel indicated that Cornwell was unable to be there for the scheduled trial date because of work commitments and would not honor a subpoena, but that he would come and testify if given sufficient notice. See Motion for Continuance Transcript. Counsel testified that he called and left several messages with the new trial date and expected Cornwell to be present, but that he never heard from Cornwell again and Cornwell did not show up for trial.

Counsel further testified that, although he does not recall specifically, he would have considered it and discussed it with Defendant, and if Defendant had insisted he would not go to trial without Cornwell, he would have requested a continuance. However, although he would have preferred to have it, counsel did not believe Cornwell's testimony was crucial as Cornwell did not witness the entire confrontation, but witnessed only a portion of it, and because the State's witness would also testify that he did not see Defendant with a weapon.

Based on the foregoing, the Court finds that Defendant has failed to establish that counsel's performance was deficient or that he was prejudiced. The evidence shows that counsel attempted to obtain Cornwell's testimony for trial, and that he reasonably believed that he had accomplished as much. Although counsel did not request a continuance when Cornwell did not show up, the decision not to do so was a reasonable tactical decision made after considering the available options and the evidence in this case. In light of the cumulative nature of Cornwell's potential testimony and the fact that Cornwell did not witness the entire confrontation, Defendant has failed to establish that Cornwell's testimony was critical to his defense such that it would warrant further continuance of the trial. Nor has Defendant established that Cornwell

would have been available or willing to testify on his behalf even if a continuance had been obtained.

(Final order Denying Motion for Post-conviction Relief at pp. 1-2).

Day appealed the adverse orders and was represented in the post-conviction appeal by assistant public defender Howardene Garrett. Ms. Garrett filed an initial brief raising one issue: "Did the trial court err in denying a new trial to Appellant because his trial attorney was ineffective for failing to call a witness for trial who was an eyewitness and who said Appellant did not have a knife, where the presence of a weapon was the key issue at trial?" (Exhibit 14). The State subsequently filed an answer brief (Exhibit 15), and Day's counsel filed a reply brief. (Exhibit 16). On November 14, 2003, in Case No. 2D03-854, the state district court of appeal per curiam affirmed the denial of post-conviction relief. (Exhibit 8). Day v. State, 871 So. 2d 221 (Fla. 2d DCA 2003)[Table]. Day filed a pro se motion for rehearing (Exhibit 17), which was denied by the state district court of appeal on January 21, 2004. (Exhibit 18). On February 11, 2004, the court issued its mandate. (Exhibit 9). Day then timely filed the present federal petition for writ of habeas corpus raising two grounds for relief. In ground one, Day raises five claims of ineffective assistance of counsel. Day is not entitled to relief from this Court on ground one because Day fails to satisfy the threshold requirements of 28 U.S.C. § 2254 (d) and (e). He is not entitled to relief on ground two because ground two is procedurally barred and fails to allege a violation of federal constitutional law.

STANDARD OF REVIEW

-10-

Because Day filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345, 1346 (11th Cir. 2002).  The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see, Bell v. Cone, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]).   AEDPA is relevant to a review of this Petition.

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Price v. Vincent, 123 S.Ct. 1848, 1852-53 (2003); Clark v. Crosby, 335 F.3d 1303, 1308 (11th Cir. 2003); Harrell v. Butterworth, 251 F.3d 926, 930 (11th Cir. 2001).   "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision.

Lockyer v. Andrade, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that  the state court's conclusion is contrary to clearly established governing federal law.  Mitchell v. Esparza, 124 S.Ct. 7, 10 (2003); Clark v. Crosby, 335 F.3d at 1308-10; Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  Mitchell v. Esparza, 124 S.Ct. at 10 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  See also Price v. Vincent, 123 S.Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75-77.  A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent.  Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell v. Esparza, 124 S.Ct. at 10; Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply.  Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  The

"unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable.  Lockyer v.  Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v.  Johnson, 532 U.S. at 791-792; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El  v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4  (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

<u>No Presumption that State Court Ignored Its Procedural Rules</u>

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal.  Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. See Coleman, 501 U.S. 722,  735-36 (1991);  Kight  v. Singletary, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); Tower v. Phillips, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.   28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91.   The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.   Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

## DISCUSSION

A review of the record demonstrates that, for the following reasons, Day's petition must be **DENIED**.

### Ground One

### INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

The state trial court correctly analyzed the claims under the standard enunciated in Strickland v. Washington, 466 U.S. 668 (1984), and reasonably concluded that trial counsel provided effective assistance.  In order to show a violation of the Sixth Amendment right to counsel, Day must satisfy the Strickland two-pronged inquiry. First, Day must demonstrate that the attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, Day "'must show

-14-

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

In ground one, Day alleges six allegations of ineffective assistance of trial counsel: (A) counsel failed to move to dismiss the information on the grounds that the probable cause affidavit was defective because the officer who signed the affidavit was not a material witness to the events at bar, and he failed to submit a sworn affidavit from the victim or other material witness to warrant sufficient probable cause; (B) counsel pressured Day to waive a jury trial; (C) counsel failed to object and move for a mistrial multiple times, depriving Day of a fair and impartial judge, fact finder, and fair trial; (D) counsel failed to investigate, interview, depose, consult and/or call several crucial witnesses; (E) counsel failed to introduce evidence to prove Day's innocence or elicit a description of the knife from Day, the victim, and Kyker; (F) the cumulative effect of all acts and omissions combined to deprive Day of a fair trial, effective assistance of counsel, and due process.  These were the same claims Day raised in his motion for post-conviction relief in state court, and are therefore exhausted. However, Day is not entitled to relief from this Court because he cannot meet the requirements of 28 U.S.C. § 2254(d) and (e). The state court's denial of these allegations, after correctly applying the Strickland two-prong test, was objectively reasonable.

Day first claims trial counsel should have sought to dismiss the Information as defective.  The state court properly denied this claim because the information was not defective on the basis that the officer who signed the arrest report was not a witness to the offense. In Florida, there is no requirement that sworn affidavits be attached to the arrest

report or the information.  The information in this case contains the required sworn oath of the Assistant State Attorney certifying that he received testimony under oath from the material witness or witnesses for the offense.

Day's second allegation is that counsel was ineffective for pressuring Day to waive a jury trial, by advising Day it would be impossible to obtain a fair trial by jury because of pre-trial publicity, and that he would not be able to get a change of venue. The state trial court concluded that it was clear from Day's statements in his Rule 3.850 motion that counsel's decision or recommendation to waive a jury trial was a strategic decision made after considering the options.  In fact, Day acknowledged that counsel presented him with counsel's reasoned recommendation, and that Day agreed to waive jury trial on the basis of counsel's advice. (Motion for Post-conviction Relief at pp. 9, 5A) The state trial court correctly found that Day's dissatisfaction with the outcome did not negate his agreement to the waiver.

Day's third allegation is that counsel was ineffective for failing to object and move for mistrial multiple times when Day was deprived of a fair and impartial judge and fact finder and a fair trial. Day refers to the trial judge's comment when denying defense counsel's motion for judgment of acquittal that "we'll proceed on further to see if there are any alternative explanations for how this happened."  The state trial court denied this claim because the trial court's comment was proper, and Day failed to establish that counsel had valid grounds to object and, therefore, that counsel's performance was deficient.  Day also alleged that counsel failed to object seven times during Day's renewed motion for judgment of acquittal when the Court stated that it "had to have an explanation" for how the

victim got cut. Again, Day failed to establish that counsel had valid grounds to object and, therefore, that counsel's performance was deficient. Finally, Day claims counsel was ineffective for failing to object during closing argument when the trial court interrupted counsel's argument to say that counsel was arguing facts not in evidence. The post-conviction court denied this allegation because it is refuted by the record.

In his fourth allegation, Day contends his attorney was ineffective for failing to interview, depose, or call several crucial witnesses at his trial. The state trial court summarily denied this claim as to all alleged witnesses except Jerry Cornwell. Day contended that Cornwell, Day's co-worker, was available and willing to testify that he was a witness to the incident and that Day did not have a weapon.  The court conducted a hearing on this allegation.

Manuel Penton, Day's trial counsel, testified that although he did not recall exactly when Day provided him with Cornwell's name, he believed it was just prior to the scheduled trial date. (Exhibit 6; Evidentiary Hearing Transcript at 175-176). Counsel testified that when he contacted Cornwell by phone at his home in Illinois after numerous unsuccessful attempts, Cornwell agreed to come to Florida to testify for Day.  (Exhibit 6 at 177-178, 179-180). At that time, counsel requested a continuance to pursue the matter further. (Exhibit 6 at 176). At the hearing on Day's motion for continuance, counsel indicated that Cornwell was unable to be there for the scheduled trial date because of work commitments and would not honor a subpoena, but that he would come to testify if given sufficient notice. Counsel testified that he called and left several messages with the new trial date and expected Cornwell to be present, but that he never heard from Cornwell again and Cornwell

did not attend the trial. (Exhibit 6 at 181, 182)  Counsel testified that Day had told him that

Cornwell would probably not be at the trial because there was a warrant out for Cornwell's

arrest. (Exhibit 6 at 188-189, 190).

Counsel further testified that, although he does not recall specifically, he would have

considered this situation and discussed the matter with Day, and if Day had insisted, he

would not have gone to trial without Cornwell; he would have requested a continuance.

(Exhibit 6 at 183, 191).   However, although counsel would have preferred to have the

testimony, counsel did not believe Cornwell's testimony was crucial, as Cornwell did not

witness the entire confrontation, but witnessed only a portion of it, and because the State's

witness would also testify that he did not see Day with a weapon. (Exhibit 6 at  187-188).

Having heard the witnesses and considered the record, the state trial court found

that Day failed to establish that counsel's performance was deficient or that Day was

prejudiced.

> The evidence shows that counsel attempted to obtain Cornwell's testimony for trial, and that he reasonably believed that he had accomplished as much. Although counsel did not request a continuance when Cornwell did not show up, the decision not to do so was a reasonable tactical  decision made after considering the available options and  the evidence in this case. In light of the cumulative nature of Cornwell's potential testimony and the fact that Cornwell did not witness the entire confrontation, Defendant has failed to establish that Cornwell's testimony was critical to his defense such that it would warrant further continuance of the trial. Nor has Defendant established that Cornwell would have been available or willing to testify on his behalf even if a continuance had been obtained.

(Final order Denying Motion for Post-conviction Relief at p. 2).

The  state trial court summarily denied additional allegations regarding counsel's

failure to call certain witnesses because those allegations were legally insufficient or refuted

by the record.  The state trial court addressed Day's claim that counsel should have called an expert witness to testify as to the type of cut suffered by the victim so as to create a reasonable doubt that it was caused by a knife. The state trial court noted that Day did not specify the testimony he was challenging. However, even assuming Day was challenging the testimony as to the type of wound, it was undisputed that the victim's injury was the result of a clean cut from a knife or other sharp object, rather than blunt trauma.  The state trial court properly reasoned that, based on the overwhelming, uncontroverted evidence that the victim's wound was the result of a cut, counsel's failure to call an expert to testify that the victim's wound was not a cut, or was not made by a knife, cannot be considered deficient performance.

Day also faults counsel's failure to call several other witnesses who allegedly would have testified as to statements made by the victim to the effect that the victim was out to get Day, or was going to get Day any way he could. The state trial court denied this allegation, finding that Day failed to establish that these hearsay statements would have been admissible at trial.

In his fifth allegation, Day claims counsel was ineffective for failing to introduce key evidence to prove Day's innocence. Specifically, Day claims that counsel failed to introduce the drywall knife or elicit a description of the knife, and failed to introduce evidence that the victim had filed a lawsuit against Day. The state trial court denied the first allegation because the record shows that counsel was allowed to present both the description of the knife and the argument that it could not have caused the victim's wound. As to the second allegation, it was refuted by the record and by Day's own statements in the Rule 3.850

motion.  Day alleged, in his Rule 3.850 motion,  that the state trial court overruled the State's objection to cross examination of the victim (Sardo) regarding his civil suit against Day, and that counsel impeached state witness James Kyker with his inconsistent deposition testimony regarding whether Sardo, the victim,  told Kyker that he would give Kyker half of the money from the suit if Kyker testified for him. (Motion for Post-conviction Relief, p. 6g) (V2, R 106-107, 133-136).

Day's final contention in ground one is that the acts and omissions outlined in the first five allegations deprived Day of a fair trial, effective assistance of counsel, and due process. The state court rejected this claim, having found no error as to each individual claim.  Consequently, there cannot be "cumulative" error. See,  e.g., Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) (Petitioner could not obtain habeas relief through aggregation of individual meritless claims he had averred; twenty times zero is zero). See also, Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir.1998) ("Cumulative error analysis applies where there are two or more actual errors;  it does not apply to the cumulative effect of non-errors."), cert. denied, 526 U. S. 1025 (1999); United States v. Easter, 66 F.3d 1018, 1023 (9th Cir. 1995) (The court having found no error in the district court's rulings, there is, a priori, no cumulative effect error).

In summary, the rulings of the state courts regarding the claim of ineffective assistance of counsel did not result in a decision that was contrary to, or involved an unreasonable application of, United States Supreme Court law, and did not result in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Thus, Day is not entitled to federal habeas corpus relief on ground one.

GROUND TWO

Day contends that the state trial court violated Day's right to due process of law when the state trial court failed to answer Day's demand for discovery motion prior to the evidentiary hearing. Day is not entitled to relief from this Court because his claim does not challenge his state court judgment. A claim of procedural error in a state collateral proceeding does not state a basis for habeas relief. See Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (involving claims as to errors at a hearing on the petitioner's 3.850 motion); see also, Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotes omitted); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989) (agreeing with the majority view and holding that "a petition alleging errors in the state post-conviction   review process is not addressable through habeas corpus proceedings"). The Eleventh Circuit recently reiterated this principle in Quince v. Crosby, 360 F.3d 1259 (11th Cir. 2004), holding that "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." Id. at 1262.

Second, this claim is procedurally barred. Day abandoned any argument he may have had regarding the alleged deprivation of due process resulting from the state court's denial of his discovery motion by failing to include this issue on appeal from the denial of

post-conviction relief. The issue has been waived or abandoned by appellate counsel's failure to include this issue in the initial brief on appeal from the order denying post-conviction relief.  In Florida, as in other jurisdictions, the appellate rules and decisional law require that issues not presented and argued in an initial brief are deemed abandoned or waived, and will not be considered by the reviewing court. See, e.g., Duest v. Dugger, 555 So. 2d 849, 851-52 (Fla. 1990) (merely making reference to arguments in the lower court without further elucidation does not suffice to preserve issues, and those claims are deemed to have been waived); Bondu v. Gurvich, 473 So. 2d 1307, 1313 n. 1 (Fla. 3d DCA 1984)(despite fact that notice of appeal stated that appellant was appealing certain additional actions of the trial court, the failure to challenge these actions in the initial brief results in abandonment of those challenges); Department of Health and Rehabilitative Services v. Petty-Eifert, 443 So. 2d 266, 268 (Fla. 1st DCA 1983) (by failing to argue on appeal issue as to whether rule was invalid exercise of delegated legislative authority, appellant waived right to contest validity of rule); St. John' s River Terminal Co., Inc. v. Vaden, 190 So. 2d 40, 41 (Fla. 1st DCA 1966) (assignments of error not argued in appellant's brief are considered abandoned); Fla. R. App. P. 9.210(b)(5)("'The initial brief shall contain ... argument with regard to each issue"). The Eleventh Circuit is in accord with this principle. See Atkins v. Singletary, 965 F.2d 952, 955 n.1(11th Cir. 1992) (determining appellants have abandoned claims not addressed on appeal); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n. 6 (11th. Cir. 1989) (stating issue abandoned where party did not make any arguments on the merits as to that issue in its initial or reply brief).

Consequently, ground two is not exhausted and is procedurally barred. See, e.g.,

Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979)(exhaustion requires not only the filing of a Rule 3.850 motion, but also an appeal of its denial); see also, Farrell v. Lane, 939 F.2d 409, 410 (7th  Cir.), cert. denied, 502 U.S. 944 (1991); Smith v. Jones, 923 F.2d 588 (8th Cir. 1991) (claims presented in post-conviction motion and not appealed were procedurally barred in subsequent habeas proceedings) .

Ground two does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Petitioner Day's petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Day and to close this case.

ORDERED at Tampa, Florida, on August 25, 2005.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Charles Edward Day